Herbert E. PERGUSON, Petitioner-Appellant,

v.

Colonel Remo J. NICOLI, Base Commander, Columbus Air Force Base, et al., Respondents-Appellees.

No. 82–4078

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 20, 1982.

Helen J. McDade, DeKalb, Miss., for petitioner-appellant.

Glen H. Davidson, U.S. Atty., John R. Hailman, Asst. U.S. Atty., Oxford, Miss.,

Robert T. Mounts, Major, USAF, Gen. Lit. Div., Washington, D.C., for respondents-appellees.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This case involves an attempt by appellant Herbert E. Perguson to challenge his court martial conviction and sentence before the prescribed orderly processes of military justice have been completed. His central claim is that the court martial had no jurisdiction over his offense because it was not service connected. In addition he challenges certain aspects of the court martial procedures, including a conclusion that the Fourth Amendment was not violated in a search of his apartment. The district court denied his claims on the ground that he had not exhausted the orderly procedures for appellate review under the Uniform Code of Military Justice, 10 U.S.C. § 859ff.

Perguson, an Air Force Master Sergeant, was tried by a general court martial and convicted of the possession of a quantity of LSD, 150 tablets of methaqualone, three pounds of marijuana, and more than an ounce of hashish. He was also convicted of wrongfully transferring less than an ounce of marijuana to Airman First Class Charles J. Newell. Possessions and the transfer all occurred off-base at his private apartment some thirteen miles from his military base. The transfer to Airman Newell was brought about by Airman Newell phoning from his quarters on the base to Sgt. Perguson and arranging the transfer to take place at the Sergeant's private quarters. Perguson's conviction is now on automatic appeal in the Court of Military Appeals after having been upheld by the convening authority.

Both parties devote substantial portions of their argument undertaking to prove their respective contentions, on the one hand that Sgt. Perguson's activities were not service connected and, therefore, not subject to court martial, or on the other hand were service connected and subject to court martial. *See O'Callahan v. Parker,* 395 U.S. 258, 272, 89 S.Ct. 1683, 1690, 23 L.Ed.2d 291 (1968); *Relford v. Commandant, U.S. Discip. Barracks, Ft. Leavenworth,* 401 U.S. 355, 363, 91 S.Ct. 649, 654, 28 L.Ed.2d 102 (1971). The district court did not find it necessary to resolve this issue on the merits, and we agree.

There are undoubtedly a number of situations in which a challenge to the jurisdiction of the military court can be pursued in federal court before the military court completes, or even begins, its activities. The principle is clear in cases involving civilian employees of the military, *McElroy v. Guagliardo,* 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1959), civilian dependents of military personnel, *Reid v. Covert,* 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1956), and ex-soldiers, *Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955).

Whether or not there may be some circumstances under which a soldier may challenge the jurisdiction of a court martial before exhausting the remedies of the military tribunals, the law is clear when the issue is whether the charged offenses are service connected. The Supreme Court in *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1974), held that military judicial remedies in those circumstances had to be exhausted. The facts of that case closely parallel the facts pertaining to *Perguson.* Councilman was an Army Captain who was charged with possession, transfer and sale of marijuana off-base during off-duty hours to another service man. While it is true that Councilman had not yet been tried, this was mentioned as only a part of the Court's overall reasoning. The Court found as reasonably analogous the requirement of exhaustion of administrative remedies, as well as the requirement of exhaustion of state judicial remedies when a federal habeas corpus proceeding is brought to challenge a state criminal proceeding. While considering the right of the courts to consider collateral impeachment of

judgments of the military courts in proper cases, the Court went on to say:

> [I]mplicit in the congressional scheme embodied in the Code is the view that the military court system generally is adequate to and responsibly will perform its assigned task. We think this congressional judgment must be respected and that it must be assumed that the military court system will vindicate servicemen's constitutional rights. We have recognized this, as well as the practical considerations common to all exhaustion requirements, in holding that federal courts normally will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted. *Gusik v. Schilder,* 340 U.S. 128 [71 S.Ct. 149, 95 L.Ed. 146] (1950); *Noyd v. Bond,* [395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1953)]. The same principles are relevant to striking the balance governing the exercise of equity power. We hold that when a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system, the federal district courts must refrain from intervention, by way of injunction or otherwise.

420 U.S. at 758, 95 S.Ct. at 1313.

This Court anticipated the holding in *Councilman* in *Scott v. Schlesinger,* 498 F.2d 1093 (5th Cir.1974). *Scott* again was another case in which an Air Force sergeant was charged with wrongfully possessing and selling LSD and marijuana, and he challenged the court martial's subject matter and personal jurisdiction of him on the ground that his offenses were not service connected. We held that the military court remedies had to be exhausted before such a collateral attack could be brought.

The only distinction between *Councilman* and the instant case is that in that case the Article III court action was undertaken before the court martial took place. We can perceive no reason for holding that after the court martial conviction, the situation is different so long as appeal in the orderly processes of the Military Code is pending.

In *Scott,* post-conviction as well as pretrial relief was sought.

Perguson urges that irreparable damage would occur to him in his case because he was sentenced to one year and his sentence would be over before the court martial appeal would be completed. This would often be true in such cases. We cannot countenance the federal courts assuming that the military tribunals will not recognize whatever rights are claimed by a member of the Armed Forces. When jurisdiction of the person as a member of the military is clear, and the issue is solely whether the alleged offense is sufficiently connected to the military service that it is cognizable in the military courts, the federal civilian courts must not intrude themselves in the orderly processes of military justice. The holdings of the United States Supreme Court and of this Circuit make that principle completely clear.

Perguson also asks us to recognize an exception from the exhaustion requirement on the ground that exhaustion will be futile in his case because of the decision of the U.S. Court of Military Appeals in *United States v. Trottier,* 9 M.J. 337 (C.M.A.1980), in which the court said that "almost every involvement of service personnel with the commerce of drugs is 'service-connected'". But it is not for us to speculate at this time on how deeply connected with military service is Sgt. Perguson's offense. We have no right at this stage to assume that the Court of Military Justice will make an incorrect decision. The Supreme Court in *Councilman* as to the issue of whether an offense is service connected said:

> But that issue turns in major part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and on whether the distinct military interest can be vindicated adequately in civilian courts. These are matters of judgment that often will turn on the precise set of facts in which the offense has occurred. See *Relford v. U.S. Disci-*

**104**

*plinary Commandant,* 401 U.S. 355 (1971). More importantly, they are matters as to which the expertise of military courts is singularly relevant, and their judgments indispensable to inform any eventual review in Art. III courts.

420 U.S. at 759, 95 S.Ct. at 1308.

The above analysis also requires that Sgt. Perguson's claims relating to the fairness of the court martial trial and his constitutional claims with respect to search and seizure must also be subject to the orderly processes of judicial review which must be exhausted before such a collateral impeachment as is involved in this case can be undertaken.

It follows that appellant's petition for a writ of habeas corpus and for additional relief, including a temporary restraining order prohibiting the Air Force from moving him to disciplinary facilities to start his sentence, were properly denied by the district court.

AFFIRMED.